# GARY S. VILLANUEVA
ATTORNEY AT LAW
11 PARK PLACE, SUITE 1601
NEW YORK, NEW YORK 10007
(212) 219-0100
----------
(212) 219-3701

August 8, 2011

<u>By ECF and Hand Delivery</u>

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Guerino Joseph
      <u>Criminal Docket No. 09-CR-362 (S-1) (ENV)</u>

Dear Judge Vitaliano:

Together with Heather Hollaway, Esq., I represent Guerino Joseph in the above-referenced matter. Mr. Joseph has reviewed the pre-sentence report and lodges no substantive objections to the report.

Mr. Joseph was found guilty after trial for his participation in the Robbery conspiracy and firearm counts charged in the indictment. Mr. Joseph faces a statutory mandatory minimum sentence of 32 years (25 years and 7 years consecutive for the firearm offenses) in federal prison. In addition, the Court may impose a guideline or non-guideline sentence for the robbery counts, as there is no mandatory minimum for conviction on these counts.

In considering a reasonable sentence, Mr. Joseph respectfully urges the Court to consider a sentence of approximately thirty two years, consecutive to a minimal non-guideline sentence. Such a sentence we believe, given Mr. Joseph's age, dedication and commitment

*The Honorable Eric N. Vitaliano*
*Page 2*
*August 8, 2011*

to his children and the collateral consequence of deportation is sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. 3553 (a).

    *I. The Collateral Impact of Deportation*

Mr. Joseph is a Haitian national. He was eleven [11] years old when he arrived in the United States. In the thirty years he has lived in the United States he has never returned to Haiti. He has no family or contacts in Haiti. His eventual deportation back to Haiti has hovered over this case since its inception. As a husband and father of young children the consequence of deportation on the Joseph family has been enormous.

The enormity of the deportation burden was magnified ten fold during the pre-trial proceedings, when Haiti, was rocked by a 7.0 magnitude earthquake, which killed 316,000 people, injured 300,000, and left 1.5 to 2 million people homeless. The U.S. State Department estimated that Haiti—the poorest county in the western hemisphere and ranked 149 out of 182 on the Human Development Index—would take an estimated 40-50 years to recover from the devastation.

The disaster in Haiti underscored the Hopson's choice facing Mr. Joseph. He could admit guilt, reduce his prison exposure but the subsequent deportation would prevent him from ever seeing or contributing to his children's growth and maturity. In essence deportation would prevent Mr. Joseph from being a father to his children.

On the other hand, a trial with the high probability of conviction exposed Mr. Joseph to essentially a life sentence. A life sentence, however, would give Mr. Joseph an opportunity to visit and contribute to the rearing of his children, albeit, from a prison cell. Mr. Joseph

*The Honorable Eric N. Vitaliano*
*Page 3*
*August 8, 2011*

opted for a trial but now finds himself a forty [41] one year old man facing essentially life in prison.[1]

Any sentence in this case will be followed by deportation to Haiti where life, prior to the earthquake was historically difficult, now after the earthquake is unthinkably horrifying. A sentence at the statutory minimum of 32 years takes into account the collateral loss of his children and wife, as well as the harsh realities of starting his life over in Haiti, as a man in his seventies.

II. 18 U.S.C. § 3553 (a) factors

As the United States Supreme Court reminds us, " the punishment should fit the offender and not merely the crime," Williams v. New York 337 U.S. 241 (1949). While the guidelines are driven primarily by mathematical calculations based on assessments of the crime, the sentencing statute, 18 U.S.C. 3553 focuses its inquiry primarily on the personal history and characteristics of the defendant. With the Haitian earthquake disaster and his paternal desire to be a father to his children to help them avoid the mistakes he has made in his life, Guerino Joseph wrestled with the decision to enter a guilty plea or go to trial. This internal struggle speaks to his character. It was Mr. Joseph's thought at the time, that he would rather face the Court's mandated sentence after trial, thus maintaining the possibility of parenting his children through o adulthood and beyond in the United States [while in prison] rather than accept a plea bargain, which would result in his earlier deportation, where he would face the prospect of never seeing his children and family again. He risked a life sentence in order to continue to be a

---

[1] However heinous the crimes of conviction, Mr. Joseph did not kill anyone. The worst or most violent class of defendants in our system, those facing the death penalty are routinely afforded the opportunity to plead to life imprisonment. Sentencing Mr. Joseph to a sentence where he will likely die in prison is a disproportionate sentence that should be reserved for that small class of defendants, whose class does not include Guerino Joseph.

*The Honorable Eric N. Vitaliano*
*Page 4*
*August 8, 2011*

father to his children.  It is this aspect of his character that supports a sentence at the statutory mandatory minimum sentence.

### III.  Family Circumstances

Guerino Joseph was born in Haiti on December 29, 1969.  He immigrated to the United States at the age of 11 and is a permanent resident of this country.  He was raised in Brooklyn.

In 1990, Mr. Joseph completed Samuel J. Tilden High School earning his high school diploma.  He married Dawn-Marie nee Williams seven years later on March 28, 1997 in Brooklyn, New York.  They have two children together, ages 11, and 10.  Mrs. Joseph is a senior office manager at Brooklyn College, and is in poor health.  She has diabetes, high blood pressure, and underwent quadruple bypass surgery in 2004.  In addition, since Mr. Joseph's incarceration she has suffered several minor heart attacks, and suffered a miscarriage shortly after Mr. Joseph's arrest.

The couple's two young boys are extremely close to Mr. Joseph.  The youngest, has mild autism and is enrolled in special education classes to treat his disability.   As described by Mrs. Joseph in her letter to the Court, both children relied heavily on their father before his arrest and have suffered severe emotional set backs as a result of his incarceration.  Not only has the oldest suffered emotionally, but the youngest who is mildly autistic is doing increasingly worse in school.  Mrs. Joseph believes the problems are a direct result of her husband's arrest in this case.  Whatever else, Mr. Joseph has consistently shown himself to be a dedicated father to his children.

Mr. Joseph also has another child, a daughter, age 4.  She resides in Georgia with her mother.  The mother remains in regular contact with Mr. Joseph.

*The Honorable Eric N. Vitaliano*
*Page 5*
*August 8, 2011*

Notably, Mr. Joseph has maintained strong ties to the community through his completion of American Red Cross CPR certification, American Red Cross Introduction to Disaster Services certification, and as a volunteer EMT with the BedStuy Volunteer Ambulance Corporation in Brooklyn. Specifically, Mr. Joseph voluntarily drove an ambulance for thirty-six hours each month for the Volunteer Ambulance Corporation.

In addition, he and his two sons volunteered with Camba Food Pantry and the Beyond Hunger Emergency Pantry eight hours each week. He also worked extensively with a SUV club, "NY's Most Wanted Family," to organizing clothing drives and other community outreach.

Moreover, Mr. Joseph has also proven himself to be a hard working man, by maintaining regular employment. He has worked steadily from 1996-2008 in a variety of positions. First as a helper for Wildcat Services Corp, sales clerk at Duane Reade, custodian at the American Red Cross, driver at Papa John's Pizza, driver at Domino's Pizza, manager at AutoZone, manager at Strauss Auto, and lastly as a self-employed car rehabilitator.

As reiterated in his wife's letter to the Court, Mr. Joseph has a strong bond with his two sons and remains the only comfort they have while he is incarcerated. Mr. Joseph's decision to go to trial was the ultimate act of a father's love. He is facing a daunting mandatory minimum sentence because he wanted to be available for his children.

*Legal Authority to Impose Concurrent Sentence*

The defense respectfully requests that the Court, pursuant to the Advisory Guideline 5G1.3 (c) of the U.S.S.G., sentence Mr. Joseph to minimal sentence on each of his Title 18 U.S.C. § 1951 counts, all to be served concurrently, then impose the two (2) Title 18 U.S.C. § 924 (c)(1) counts consecutively, as required by law, thereby resulting in a fair sentence, and one that would achieve the required results of Title 18 U.S.C. § 3553(a)(2).

*The Honorable Eric N. Vitaliano*
*Page 6*
*August 8, 2011*

The two § 924(c)(1) counts carries a statutory minimum sentence of 32 years in prison. Mr. Joseph is currently 41 years old, and a 32-year sentence would put him squarely at seventy three (73) years old when he is released and deported to Haiti. Such a sentence is severe enough to reflect the seriousness of the offense; promotes respect for the law; and provides just punishment for the offense, 18 U.S.C. § 3553 (a) (2) (A). A 33-year sentence also affords adequate deterrence to criminal conduct. 18 U.S.C. § 3553 (a) (2) (B); protects the public from further crimes of the defendant 18 U.S.C. § 3553 (a) (2) (C); and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment18 U.S.C. § 3553 (a) (2) (D).

Moreover, Title 18 U.S.C § 3584 gives the Court authority to impose concurrent § 1951sentences, in addition to Mr. Joseph's Title 18 U.S.C. § 924(c)(1) consecutive sentences, so long as the court considers the factors set forth in section 3553(a).

*IV. Conclusion*

Just as deportation has hovered over this case, so has Mr. Joseph's selfless love of his three children and wife. His decisions in this case were informed by that love and commitment. Mr. Joseph steadfastly maintained his wish to be a part of his children's life, both as children, as well as adults in any capacity possible. It is this act of selflessness that Mr. Joseph has displayed, even in light of the serious charges, that should motivate this Court to sentence him to the minimum statutory sentence available.

Thank you for your consideration.

Respectfully submitted,


Gary S. Villanueva

Cc:  A.U.S.A. Zainab Ahmad ( By email)